Fernando Anzaldua (AZ #031185)
National Labor Relations Board, Region 28
2600 N. Central Avenue, Suite 1400
Phoenix, Arizona  85004
Tel:  (602) 416-4757
Fax: (602) 640-2178
Email:  Fernando.Anzaldua@nlrb.gov

Attorney for Petitioner

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CORNELE A. OVERSTREET, Regional Director of the Twenty-Eighth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board,<br><br>Petitioner,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Respondent. | Case No.<br><br>PETITION FOR TEMPORARY INJUNCTION UNDER SECTION 10(j) OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED [29 U.S.C. § 160(j)]<br><br>(Oral Argument Requested) |

Cornele A. Overstreet, Regional Director of Region 28 (the Regional Director) of the National Labor Relations Board (the Board), petitions this Court, for and on behalf of the Board, pursuant to Section 10(j) of the National Labor Relations Act, as amended [61 Stat. 149; 73 Stat. 544; 29 U.S.C. § 160(j)] (the Act), for appropriate injunctive relief pending the final disposition of the matters involved herein pending a decision by the Board, on complaints issued by the General Counsel (General Counsel) of the

Board, alleging, inter alia, that Respondent has engaged in, and is engaging in, acts and conduct in violation of Section 8(a)(1), (3), and (4) of the Act [29 U.S.C. § 158(a)(1), (3), and (4)]. In support of this petition, Petitioner respectfully shows as follows:

1. Petitioner is the Regional Director for Region 28 of the Board, an independent agency of the United States Government created by statute, 29 U.S.C. §§ 151-169, and charged under Section 10(a) of the Act [29 U.S.C. § 160(a)] with preventing any person from engaging in unfair labor practices affecting commerce within the meaning of Section 8 of the Act [29 U.S.C. § 158], and files this petition for and on behalf of the Board.

2. Respondent is a corporation with an office and place of business in Phoenix, Arizona (Respondent's facility), and has been engaged in operating public restaurants selling food and beverages.

3. Jurisdiction of the Court is invoked pursuant to Section 10(j) of the Act [29 U.S.C. § 160(j)], which provides, inter alia, that the Board shall have power, upon issuance of a complaint charging that any person has engaged in unfair labor practices, to petition any United States district court within any district wherein the unfair labor practices in question are alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary injunctive relief or restraining order pending final disposition of the matter by the Board.

4. Workers United a/w Service Employees International Union (the Union) filed the following charges with the Board on the following dates, alleging that

Respondent engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3), and (4) of the Act [29 U.S.C. § 158(a)(1), (3), and (4)]:

| Board Case No. | Version of Charge | Date Filed | Exhibit |
| --- | --- | --- | --- |
| 28-CA-289622 | Original | January 26, 2022 | PX 1 |
| 28-CA-289622 | First Amended | February 4, 2022 | PX 2 |
| 28-CA-291044 | Original | February 22, 2022 | PX 3 |
| 28-CA-289622 | Second Amended | February 23, 2022 | PX 4 |
| 28-CA-293522 | Original | April 4, 2022 | PX 5 |
| 28-CA-291044 | First Amended | April 5, 2022 | PX 6 |
| 28-CA-293522 | First Amended | April 15, 2022 | PX 7 |

5. The aforesaid charges were referred to Petitioner as Regional Director for Region 28 of the Board.

6. Upon investigation, Petitioner determined that there is a likelihood of success on the merits, as alleged in the aforesaid charges, that Respondent is engaging in unfair labor practices in violation of Sections 8(a)(1), (3), and (4) of the Act [29 U.S.C. 158(a)(1), (3), and (4)].

7. (a) Upon investigation of the charges described above in paragraph 4, in which Respondent was given the opportunity to present evidence and legal argument, Petitioner, on behalf of the Board, pursuant to Section 10(b) of the Act [29 U.S.C. § 160(b)], issued a Complaint and Notice of Hearing in Case 28-CA-289622 on March 15, 2022, alleging that Respondent engaged in, and is engaging in, unfair labor practices as charged within the meaning of Section 8(a)(1) and (3) of the Act. (PX 8).

3

(b)     Upon investigation of the charges described above in paragraph 4, in which Respondent was given the opportunity to present evidence and legal argument, Petitioner, on behalf of the Board, pursuant to Section 10(b) of the Act [29 U.S.C. § 160(b)], issued a Complaint and Notice of Hearing in Case 28-CA-291044 on April 13, 2022, alleging that Respondent engaged in, and is engaging in, unfair labor practices as charged within the meaning of Section 8(a)(1), (3), and (4) of the Act. (PX 9).

(c)     Upon investigation of the charges described above in paragraph 4, in which Respondent was given the opportunity to present evidence and legal argument, Petitioner, on behalf of the Board, pursuant to Section 10(b) of the Act [29 U.S.C. § 160(b)], issued a Complaint and Notice of Hearing in Case 28-CA-293522 on April 18, 2022, alleging that Respondent engaged in, and is engaging in, unfair labor practices as charged within the meaning of Section 8(a)(1), (3), and (4) of the Act. (PX 10) (Collectively, the Complaints).

(d)     On March 29, 2022, Respondent filed its Answer to the Complaint (Answer) in Case 28-CA-289622, denying the commission of any unfair labor practices. (PX 11).

(e)     As of the date of filing this Petition, Respondent has not filed its Answer to the Complaint in Cases 28-CA-291044 and 28-CA-293522, which are due on April 27, 2022 and May 2, 2022, respectively. (PX 9 at 5-6; PX 10 at 5).

(f)     A hearing before an administrative law judge of the Board has been noticed and is scheduled to commence on June 14, 2022, by a means and method to be determined. (PX 8-10).

8. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, true copies of the aforesaid charges, Complaints, and Answer, which have been marked as Exhibits as set forth above, are incorporated herein as though fully set forth.

9. There is reasonable cause to believe that the allegations set forth in the Complaints, as further described below, are true and that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3), and (4) of the Act [29 U.S.C. § 158(a)(1) and (3)], affecting commerce within the meaning of Section 2(6) and (7) of the Act[29 U.S.C. § 152 (6) and (7)], for which a remedy will be ordered by the Board, but that the Board's order for such remedy will be frustrated without the temporary injunctive relief sought herein. Petitioner asserts that there is a substantial likelihood of success in prevailing in the underlying administrative proceedings and establishing that Respondent has engaged in, and is engaging in, unfair labor practices in violation of Section 8(a)(1), (3), and (4) of the Act by, inter alia, (1) engaging in surveillance of employees' protected activities; (2) creating the impression that employees' protected activities were under surveillance; (3) issuing written discipline to, and suspending, and discharging a prominent Union supporter because of her protected activities and union activities; (4) constructively discharging an employee during a nascent organizing campaign by repeatedly denying her schedule availability requests; (5) rescinding an employee's previously granted accommodations, requiring them to submit medical documentation, and placing them on an unpaid leave of absence in response to their protected concerted activities, union activities, and Board activities; and (6) disciplining and discharging an employee for engaging in protected activities,

union activities, and Board activities. In support thereof, and of the request for temporary injunctive relief, Petitioner, upon information and belief, shows as follows:

10. (a) At all material times, Respondent has been a corporation with an office and place of business in Phoenix, Arizona (Respondent's facility), and has been engaged in operating public restaurants selling food and beverages.

(b) In conducting its operations during the 12-month period ending January 26, 2022, Respondent derived gross revenues in excess of $500,000.

(c) During the period of time described above in paragraph 10(b), Respondent, in conducting its operations described above in paragraph 10(a), purchased and received at Respondent's facility goods valued in excess of $5,000 directly from points outside the State of Arizona.

(d) At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act. [29 U.S.C. § 152(2), (6), and (7)].

(e) At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act [29 U.S.C. § 152(5)].

(f) At all material times, the following individuals held the position set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act [29 U.S.C. § 152(11)] and/or agents of Respondent within the meaning of Section 2(13) of the Act [29 U.S.C. § 152(13)]:

| Name | Job Title |
| --- | --- |
| Nichell Olson | Store Manager |

6

| Megan Diller | District Manager |
| Scott Rabe | Ethics and Compliance Investigator |

(g) From about January 6, 2022, to about April 4, 2022, Respondent's employee Laila Dalton (Dalton) engaged in concerted activities with other employees for the purposes of mutual aid and protection and concertedly complained to Respondent regarding the wages, hours, and working conditions of Respondent's employees, by raising concerns with others and with Respondent about understaffing, hours, supervisors' treatment of employees, and other terms and conditions of employment.

(h) About January 21, 2022, Respondent, by Megan Diller, at Respondent's facility

(1) engaged in surveillance of employees engaged in union and protected concerted activities; and

(2) created an impression among its employees that their union and protected concerted activities were under surveillance by Respondent.

(i) About January 21, 2022, Respondent began enforcing a previously unenforced rule prohibiting employees from communicating with supervisors by text message.

(j) About January 25, 2022, Respondent:

(1) issued a written warning to Dalton;

7

(2)     relied on a previously tolerated attendance incident on November 22, 2021, in the written warning described above in paragraph 10(j)(1);

(3)     relied on a previously excused and tolerated absence on November 28, 2021, in the written warning described above in paragraph 10(j)(1);

(4)     relied on a previously tolerated tardiness incident on January 5, 2022, in the written warning described above in paragraph 10(j)(1);

(5)     relied on a previously tolerated unauthorized shift on January 9, 2022, in the written warning described above in paragraph 10(j)(1);

(6)     relied on a previously tolerated medical absence on January 13, 2022, in the written warning described above in paragraph 10(j)(1);

(7)     relied on a previously tolerated medical absence on January 16, 2022, in the written warning described above in paragraph 10(j)(1);

(8)     relied on a previously tolerated instance of Dalton texting a supervisor to report an absence on November 28, 2021, in the written warning described above in paragraph 10(j)(1);

(9)     relied on a previously tolerated instance of Dalton texting a supervisor about work-related concerns on January 6, 2022, in the written warning described above in paragraph 10(j)(1);

(10)    relied on a previously tolerated instance of Dalton documenting concerns in the Daily Record Book on January 8, 2022, in the written warning described above in paragraph 10(j)(1);

          (11)    relied on a previously tolerated instance of Dalton unsuccessfully attempting to find coverage on January 6, 2022, in the written warning described above in paragraph 10(j)(1);

          (12)    relied on an incident in which Dalton clocked out later than instructed due to lack of coverage on January 19, 2022, in the written warning described above in paragraph 10(j)(1);

          (13)    relied on an incident in which Dalton clocked out later than instructed due to lack of coverage on January 22, 2022, in the written warning described above in paragraph 10(j)(1);

          (i)    suspended Dalton; and

          (ii)    closed Respondent's facility earlier than scheduled.

(k)    About January 22, 2022, Respondent stopped granting the scheduling availability requests of its employee Alyssa Sanchez (Sanchez).

(l)    By the conduct described above in paragraph 10(q), Respondent caused the termination of its employee Sanchez.

(m)    About February 16, 2022, Respondent began an investigation into alleged conduct of its employee Laila Dalton (Dalton) on January 27, 2022, and January 31, 2022.

(n)    About March 11, 2022, respondent issued a written warning to its employee Dalton.

(o) About February 25, 2022, Respondent required its employee Tyler Gillette (they/them) (Gillette) to submit medical documentation regarding their previously granted accommodations.

(p) About March 9, 2022, Respondent rescinded its employee Gillette's previously granted accommodations.

(q) About March 10, 2022, Respondent placed its employee Gillette on an indefinite and unpaid Leave of Absence.

(r) About April 4, 2022, Respondent issued a Final Written Warning to its employee Dalton.

(s) About April 4, 2022, Respondent discharged its employee Dalton.

(t) Respondent engaged in the conduct described above because the named employees of Respondent engaged in protected concerted activities, and to discourage employees from engaging in these or other concerted activities.

(u) Respondent engaged in the conduct described above because the named employees of Respondent formed, joined, or assisted the Union and engaged in concerted activities, and to discourage employees from engaging in these activities.

(v) Respondent engaged in the conduct described above because the named employees of Respondent gave testimony to the Board in the form of affidavits, was named in charges in Cases 28-CA-289622 and 28-CA-291044, and/or cooperated in Board investigations in Cases 28-CA-289622 and 28-CA-291044.

(w) By the conduct described above in paragraph 10, Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights

10

guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act. [29 U.S.C. § 158(a)(1)]

(x) By the conduct described above in paragraph 10, Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act. [29 U.S.C. § 158(a)(1) and (3)]

(y) By the conduct described above in paragraph 10, Respondent has been discriminating against employees for filing charges or giving testimony under the Act in violation of Section 8(a)(1) and (4) of the Act.

(z) The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act. [29 U.S.C. § 152 (6) and (7)].

11. Respondent's unfair labor practices, described above in paragraph 10, have irreparably harmed, and are continuing to harm, employees of Respondent in the exercise of rights guaranteed them by Section 7 of the Act [29 U.S.C. § 157]. More specifically, Respondent's unfair labor practices have caused the following harm:

(a) Respondent's employees suffered significant economic harm through the loss of work hours, and loss of pay and livelihood as a result of their unlawful discharge due to their concerted and Union activities;

(b) Respondent's unfair labor practices have deprived its employees of the right to freely choose whether they wish to be represented by the Union, thereby depriving employees of the benefits of representation by a union of their choosing; and

11

(c) Respondent's unfair labor practices have created an atmosphere wherein employees fear retaliation and discharge by Respondent on an ongoing and daily basis if they engage in concerted and Union activities or if they continue to show support for the Union.

12. Upon information and belief, unless injunctive relief is immediately obtained, it can fairly be anticipated that employees will permanently and irreversibly lose the benefits of the Board's processes and the exercise of statutory rights for the entire period required for Board adjudication, a harm which cannot be remedied in due course by the Board.

13. There is no adequate remedy at law for the irreparable harm being caused by Respondent's unfair labor practices, as described above in paragraph 10. Granting the temporary injunctive relief requested by Petitioner will cause no undue hardship to Respondent.

14. In balancing the equities in this matter, if injunctive relief as requested is not granted, the harm to the employees involved herein, to the public interest, and to the purposes of the Act, would clearly outweigh any harm that the grant of such injunctive relief will work on Respondent.

15. Upon information and belief, it may fairly be anticipated that unless Respondent's conduct of the unfair labor practices described in paragraph 10 above is immediately enjoined and restrained, Respondent will continue to engage in those acts and conduct, or similar acts and conduct constituting unfair labor practices, during the proceedings before the Board and during any subsequent proceedings before a United

States Court of Appeals, with the predictable result of continued interference with the rights of employees to engage in activities protected by Section 7 of the Act, with the result that employees will be deprived of their Section 7 rights under the Act, inter alia, to form, join, or assist a labor organization or to refrain from any and all such activities, employees will be denied their statutory right to freely express their choice as to representation or to be represented for collective-bargaining purposes by the Union, and the Union will be unable to ever obtain a fair election for certification as the collective-bargaining representative of the Respondent's employees, all to the detriment of the policies of the Act, the public interest, the interest of the employees involved, and the interest of the Union.

16.   Upon information and belief, to avoid the serious consequences set forth above, it is essential, just, proper, and appropriate for the purposes of effectuating the policies of the Act and the public interest, and avoiding substantial, irreparable, and immediate injury to such policies and interest, and in accordance with the purposes of Section 10(j) of the Act that, pending final disposition of the matters involved pending before the Board, Respondent be enjoined and restrained from the commission of the acts and conduct alleged above, similar acts and conduct or repetitions thereof, and be ordered to take the affirmative action set forth below in paragraph 2:

WHEREFORE, Petitioner prays:

1.   That the Court issue an order directing Respondent to appear before this Court, at a time and place fixed by the Court, and show cause, if any, why an injunction should not issue directing, enjoining, and restraining Respondent, its officers, agents,

servants, representatives, successors, and assigns, and all persons acting in concert with them, pending the final disposition of the matters herein pending before the Board, to cease and desist from:

    (a)    disciplining, suspending, imposing leaves of absence upon, discharging and/or constructively discharging its employees because they engaged in protected concerted activities, union activities and support, or Board activities;

    (b)    denying employees' schedule availability requests because they engaged in protected concerted activities, union activities and support, or Board activities;

    (c)    imposing conditions on employees' previously granted accommodations because they engaged in protected concerted activities, union activities and support, or Board activities;

    (d)    Surveilling or creating the impression of surveillance of employees' protected concerted activities, union activities, or Board activities; and

    (e)    in any other manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them under Section 7 of the National Labor Relations Act [29 U.S.C. § 157].

2.    That the Court require Respondent to take the following affirmative actions:

    (a)    Within five (5) days of the District Court's Order, offer, in writing, to discriminatees Alyssa Sanchez (Sanchez), Alana "Tyler" Gillette (Gillette), and Laila Dalton (Dalton), interim reinstatement or the equivalent return from leave of absence to

14

their former positions, or if those positions no longer exist to substantially equivalent positions of employment, displacing, if necessary, any employees who may have been hired, reassigned or transferred to replace them, without prejudice to their seniority or any other rights or privileges previously enjoyed, including schedule flexibilities or unconditional accommodations;

    (b) Within five (5) days of the District Court's Order, resume approving Sanchez's schedule availability requests in the same manner as before January 2022, and notify Sanchez in writing this has been done;

    (c) Within five (5) days of the District Court's Order, immediately rescind the conditions placed on Gillet's accommodations, resume permitting Gillette the unconditional accommodations in the same manner as had been previously granted, resume scheduling Gillette for work, and notify Gillette in writing this has been done;

    (d) Within five (5) days of the District Court's Order, immediately rescind the unlawful Corrective Action Form, suspension, documented coaching, final written warning and separation notice (the Disciplines) issued to Dalton, remove from its files, any and all records of the Disciplines issued to Dalton, do not rely on the Disciplines in assessing any future disciplinary actions, and notify Dalton in writing when this has been done and that the Disciplines will not be used against her in any way;

    (e) Within five (5) days of the District Court's Order, remove from its files any and all records of the discharges of Sanchez and Dalton, do not rely on the discharges in assessing any future disciplinary actions, and within three (3) days

thereafter, notify them in writing that this was done and that the discharges will not be used against them in any way;

   (f) Within seven (7) days of the District Court's Order, post physical copies of the District Court's Order at the Respondent's Scottsdale and Mayo locations, as well as translations of the District Court's Order in other languages as necessary to ensure effective communication to Respondent's employees as determined by the Regional Director for Region 28 of the Board (Regional Director), said translations to be provided by Respondent at Respondent's expense and approved by the Regional Director, on the bulletin board, in all breakrooms, and in all other places where Respondent normally posts notices to its employees at Respondent's Scottsdale and Mayo locations; maintain these postings during the pendency of the Board's administrative proceedings free from all obstructions and defacements; grant all employees free and unrestricted access to said postings; and grant agents of the Board reasonable access to its Scottsdale and Mayo locations to monitor compliance with this posting requirement;

   (g) Within seven (7) days of the District Court's Order, distribute electronic copies of the District Court's Order, as well as translations in other languages as necessary to ensure effective communication to Respondent's employees as determined by the Regional Director, said translations of the District Court's Order to be provided by Respondent at Respondent's expense and approved by the Regional Director, to all employees employed by Respondent in the United States and its

16

Territories via the Partner Hub, and all other intranet or internet sites or applications Respondent uses to communicate with employees;

      (h)      Within seven (7) days of the District Court's Order, hold one or more mandatory meetings, on working time and at times when Respondent customarily holds employee meetings, and scheduled to ensure the widest possible attendance consistent with Respondent's social distancing requirements and health and safety measures in light of the COVID-19 pandemic, at Respondent's Scottsdale and Mayo locations, during which the District Court's Order will be read in English to all employees, supervisors, managers, and agents, including Store Manager Nichell Olson (Olson), together with each other and not in meetings separated by job classification(s), by District Manager Megan Diller (Diller) or, at the Employer's option, by an agent of the Board in English in the presence of Diller, Olson, employees, supervisors, managers, and agents.  If more than one meeting is held, Diller an Olson shall attend each such meeting with employees, supervisors, managers, and agents. Respondent shall also afford the Union, through the Regional Director, reasonable notice and opportunity to have a representative present when the District Court's Order is read to employees. Interpreters shall be made available at Respondent's expense for any individual whose language of fluency is other than English. Respondent shall announce the meeting(s) for the Order reading in the same manner it would customarily announce a meeting to employees; the meeting(s) shall be for the above-stated purpose only. Individuals unable to attend the meeting to which they have been assigned will be able to attend a subsequent meeting during which the same reading shall take place under the same

17

conditions. Respondent shall allow all employees to attend these meetings without penalty or adverse employment consequences, either financial or otherwise;

        (i)      Within seven (7) days of the District Court's Order, distribute electronic copies of a video recording (including audio), of a high-level Respondent official at Respondent's Corporate or Nationwide level (an individual in a position such as CEO or Vice President of Human Resources) reading the District Court's Order in the presence of a Board agent or, at Respondent's option, a Board agent reading the District Court's Order in the presence of a high-level Respondent official at Respondent's Corporate or Nationwide level (an individual in a position such as CEO or Vice President of Human Resources), on Respondent's Partner Hub and all other intranet or internet sites or applications that Respondent uses to communicate with employees, such that the video can be accessed by employees at all of its stores in the United States and its Territories;

        (j)      Within twenty (20) days of the issuance of the District Court's Decision and Order, file with the District Court, with a copy submitted to the Regional Director, a sworn affidavit from a responsible Respondent official, setting forth with specificity the manner in which Respondent has complied with the terms of the Court's Order, including how and where the documents have been posted, and the date(s), time(s), and location(s) that the District Court's Order was read to employees and by whom, as required by the District Court's Order.

3. That upon return of said Order to Show Cause, the Court issue an Order Granting Temporary Injunction enjoining and restraining Respondent in the manner set forth above.

4. That the Court grant such further and other relief as may be just and proper.

Dated at Phoenix, Arizona, this 22nd day of April 2022.

                        */s/ Fernando Anzaldua*
                        Fernando Anzaldua, Attorney
                            On behalf of:
                        Cornele A. Overstreet, Regional Director
                        National Labor Relations Board, Region 28
                        2600 N. Central Avenue, Suite 1400
                        Phoenix, Arizona 85004